# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **MARVIN ABERNATHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No. 15-cv-3223** |
| | ) | |
| **EASTERN ILLINOIS** | ) | |
| **RAILROAD COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Commencing on January 16, 2018, this Court held a three-day jury trial on Plaintiff Marvin Abernathy's claim against Defendant Eastern Illinois Railroad Company under the Federal Employers' Liability Act (FELA). At the close of Plaintiff's case, Defendant moved for a directed verdict, which the Court denied. On January 18, 2018, the jury returned a verdict finding both Defendant and Plaintiff negligent and that their respective negligence caused or contributed to Plaintiff's injuries. The jury found Plaintiff's damages totaled $750,000 and that Plaintiff's

negligence caused 30% of the damages and Defendant's negligence caused 70% of the damages, for a net verdict of $525,000. The Judgment was filed on January 22, 2018 (d/e 56).

On February 15, 2018, Defendant filed a Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. Proc. 50(b) or, Alternatively, Motion for New Trial Pursuant to Fed. R. Civ. Proc. 50(b) and 59 (d/e 57). On April 10, 2018, the Court stayed enforcement of the judgment. For the reasons that follow, the Motion is DENIED.

## I. FACTUAL BACKGROUND

The parties are familiar with the facts of the case. To summarize the facts, Plaintiff worked as a track inspector for Defendant for approximately 16 years. On September 13, 2012, Plaintiff and another employee transported railroad ties over a public roadway using a backhoe. While transporting the railroad ties, the load shifted, and one or more ties spilled from the backhoe onto Illinois Route 130. Plaintiff and his co-worker manually lifted the ties off the roadway and placed them back on the backhoe. Plaintiff claims he injured his back while manually lifting one of the ties.

Plaintiff testified that he preferred to use a piece of equipment called a tie handler, also called a tie crane, to transport ties. A tie handler runs on the railroad tracks, has a boom that can grab ties, and has a cart to hold the ties. With a tie handler, a worker can move ties all over the railroad without having to drive on public roads. Plaintiff had previously operated the backhoe to transport ties within the yard. Plaintiff testified, however, that he had never before operated a backhoe down the road with a load like he had on September 13, 2012. In the past, he had used the tie handler or the transportation of the ties was outsourced.

Defendant's tie handler was not operational on September 13, 2012, having stopped working approximately four years earlier. The parties presented conflicting evidence on the extent to which Defendant's employees used the tie handler before it became inoperable. Plaintiff testified he used the tie handler weekly when it was operational. Plaintiff also testified that he repeatedly asked Defendant's general manager, Tim Allen, to repair or replace the tie handler, but Defendant refused. Plaintiff told Allen how unsafe their work was going to be without the tie handler, that it was a safety issue, and that the tie handler needed to be fixed.

Allen testified that it was not his call to repair or replace the tie handler but that he did not want to do so because he thought Plaintiff would abuse the tie handler and run it into the ground. Everett Fletcher, Defendant's president, testified the tie handler was not repaired or replaced because it was seldom used and because of the cost. Allen testified that Defendant hired out big projects and used adequate equipment for smaller jobs. According to Defendant's witnesses, the backhoe or a pickup truck constituted adequate equipment for transporting ties.

Plaintiff reported the September 13, 2012 accident to Defendant and continued to work. Plaintiff testified that Allen instructed the other employees to help Plaintiff do his job because Plaintiff hurt his back. In addition, work slowed down over the winter months and Plaintiff generally performed more minor work in the winter.

Approximately 14 months after the accident, Plaintiff saw a doctor about his back pain for the first time. In February 2016, Plaintiff underwent surgical treatment whereby the surgeon removed the disc at two levels, replaced the discs with a cage, and put in screws that connected with rods in Plaintiff's back.

In February 2014, Defendant fired Plaintiff. After Plaintiff was fired, Defendant purchased a new tie handler for the stated reason that the Environmental Protection Agency made it mandatory for Defendant to clean up the right-of-way.

Plaintiff testified that if he had not been hurt, he would have retired at age 68 (he was 45 years old at trial). When he worked for Defendant, Plaintiff earned $16.70 and generally worked 40 hours per week. He also received paid vacation and benefits. Plaintiff testified the injury changed every aspect of his life. He cannot sit for a long period of time, play ball with his children, or take vacations.

Plaintiff's surgeon, Dr. Thomas Lee, testified that, while Plaintiff's prognosis was good for some additional improvement, he did not anticipate that Plaintiff would return to the same level of functioning he was at in September 2012. According to Dr. Lee, Plaintiff could not return to employment at the same level he was working before, which was heavy manual labor. Dr. Lee testified that he believed, to a reasonable degree of medical certainty, that the conditions for which he provided treatment to Plaintiff were

caused by or contributed to be caused by the occurrence at work on
September 13, 2012.

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant argues that the Court should enter judgment as a
matter of law because the jury did not have legally sufficient
evidence for its verdict.

Federal Rule of Civil Procedure 50(a) provides that, during
trial, a court may grant judgment as a matter of law if "a party has
been fully heard on an issue during a jury trial and the court finds
that a reasonable jury would not have a legally sufficient evidentiary
basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  If
the Court denies the motion, the party may renew the motion after
entry of judgment on the verdict.  Fed. R. Civ. P. 50(b).

When reviewing a motion for judgment as a matter of law
under Rule 50(b), this Court examines all the evidence in the record
and construes the facts strictly in favor of the non-moving
party.  May v. Chrysler Grp., LLC, 716 F.3d 963, 971 (7th Cir.
2013).  "That includes drawing all reasonable inferences in that
party's favor and disregarding all evidence favorable to the moving
party that the jury is not required to believe."  Id. (also noting that

the court does not make credibility determinations or weigh the evidence). The motion should be granted only where no rational jury could have found for the prevailing party. <u>Tate v. Exec. Mgmt. Serv., Inc.</u>, 546 F.3d 528, 532 (7th Cir. 2008).

Defendant seeks judgment as a matter of law on four grounds: that Plaintiff did not present evidence sufficient for the jury to find: (1) that Defendant had a duty to supply the tie handler; (2) foreseeability; (3) causation; and (4) negligence with respect to the manual lifting of the railroad tie.

Under the FELA, a railroad has a duty to provide its employees with a safe workplace. <u>Holbrook v. Norfolk S. Ry. Co.</u>, 414 F.3d 739, 741 (7th Cir. 2005); <u>Darrough v. CSX Transp., Inc.</u>, 321 F.3d 674, 676 (7th Cir. 2003) (describing the duty as one to provide a reasonably safe workplace). This duty includes ensuring that the equipment the employees use is reasonably safe and suitable to the tasks. <u>See</u> <u>Jordan v. S. Ry. Co.</u>, 970 F.2d 1350, 1353 (4th Cir. 1992); <u>Dukes v. Ill. Cent. R.R. Co.</u>, 934 F. Supp. 939, 945 (N.D. Ill. 1996). The railroad is not, however, required to furnish its employees with the safest equipment. <u>See</u> <u>Darrough</u>, 321 F.3d at

676 (providing that the railroad does not have to provide the safest environment).

A plaintiff in an FELA case must prove all of the elements of negligence against the employer—foreseeability, duty, breach, and causation. Crompton v. BNSF RY. Co., 745 F.3d 292, 296 (7th Cir. 2014). However, Congress intended that the FELA provide broad, remedial measures for railroad employees. Therefore, an "injured railroad employer can recover under the FELA as long as the employer's negligence 'played any part, even the slightest, in producing the injury . . . for which damages are sought.'" Kulavic v. Chi. & Ill. Midland Ry. Co., 1 F.3d 507, 512 (7th Cir. 1993) (quoting Rogers v. Mo. Pac. R.R., 352 U.S. 500, 506 (1957)). Moreover, the jury has "broad discretion to engage in common sense inferences regarding issues of causation and fault." Harbin v. Burlington N. R.R. Co., 921 F.2d 129, 132 (7th Cir. 1990) (noting that numerous FELA actions have been submitted to the jury based upon "evidence scarcely more substantial than pigeon bone broth"); Crompton, 745 F.3d at 296 (referring to a "relaxed standard of causation").

Defendant first argues that Plaintiff did not present evidence from which the jury could find a duty to supply a tie handler.

Defendant asserts that Plaintiff did not present evidence that he was directed to use the backhoe or evidence that the methods actually available or used—the backhoe and pickup truck—were unsafe.

Defendant had a duty to provide a reasonably safe work environment and provide reasonably safe equipment. Plaintiff presented evidence that the backhoe and pickup trucks were not reasonably safe and suitable to transport the ties over the public roadway to the job site. Plaintiff, who worked for Defendant for approximately 16 years, testified that he used the backhoe only to move ties within the yard but not on the public roadway. He had never before operated a backhoe on a public road with a load like he had on September 13, 2012.

Plaintiff also testified that it was not the practice to use pickup trucks to move ties. Defendant's expert, Kendall Mulvaney, the general superintendent of R & R General Contractors testified that

he did not use pickup trucks to transport ties but typically used flatbed trucks.[1]

Plaintiff testified that he regularly used the tie handler to move ties when the tie handler was working. Once it became inoperable, he repeatedly asked Defendant to repair or replace the tie handler. Although Defendant's witnesses testified that Plaintiff hardly ever used the tie handler when it was working, they also testified that Plaintiff misused the tie handler and "ran it into the ground," which suggests he did, in fact use it frequently. Plaintiff also presented evidence that Defendant failed to maintain the tie handler, which also led to its disrepair. The Court finds that the jury had evidence from which the jury could find that neither the backhoe nor the pickup truck were safe alternatives for moving the ties on the public roadway on September 13, 2012.

Defendant also argues that Plaintiff failed to present evidence that Defendant had notice of the condition that produced the injury. Defendant asserts that FELA negligence requires

---

[1] The Court also notes that Mulvaney testified that he sometimes used the backhoe to transport ties and that the backhoe was an accepted method of transportation.

foreseeability that the "workplace method presented an anticipated mishap-producing injury." Def. Mem. at 5 (d/e 58).

"To establish that a railroad breached its duty to provide a safe workplace, the plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm." McGinn v. Burlington N. R.R. Co., 102 F.3d 295, 300 (7th Cir. 1996). To establish foreseeability, "a plaintiff must show that the employer had actual or constructive notice of those harmful circumstances." Holbrook, 414 F.3d at 742. However, the plaintiff does not have to show that defendant foresaw the particular consequences of the negligent act. See Gallick v. Baltimore & O.R. Co., 372 U.S. 108, 118 (1963) (holding that the FELA defendant "need not foresee the particular consequences of his negligent acts; assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable"); Williams v. N.E. Ill. Regional Commuter R.R. Corp., No. 00 C 2250, 2002 WL 1433724, at *6 (N.D. Ill. June 26, 2002) (noting that an FELA plaintiff "need not show that a similar incident occurred on a previous occasion" to establish foreseeability). Instead, a plaintiff must show

"circumstances which a reasonable person would foresee as creating a potential for harm." McGinn, 102 F.3d at 300.

In this case, Defendant had notice that the tie handler was not operational approximately four years before the injury. Plaintiff testified that he repeatedly asked Allen to repair or replace the tie handler. Plaintiff told Allen how unsafe their work was going to be and that it was a safety issue that needed to be fixed. A reasonable person could foresee that requiring that employees use a backhoe to transport ties on a public roadway as opposed to using a tie handler could result in the ties slipping off the backhoe and onto the public road, thereby requiring the workers to manua1ly lift the ties back onto the backhoe. See Gallick, 372 U.S. at 118 (finding reasonable foreseeability of harm was met where the jury found the respondent was negligent in maintaining a filthy pool of water; the petitioner was bitten by an insect, the wound became infected, and both of the petitioner's legs were amputated).

Third, Defendant argues that the causation analysis requires that Defendant's negligence produced or contributed to produce the injury. Defendant argues that the injury was not the result of a defect in the backhoe and the transport of the tie did not provide

"any contributing force to the injury."  Def. Mem. at 6.  Instead,
according to Defendant, the manual lifting of the tie produced the
alleged injury.  That is, the subsequent and independent act of
Plaintiff performing the manual lift caused the injury.

As noted above, and employee can recover under the FELA so
long as the employer's negligence played any part in producing the
injury.  Kulavic, 1 F.3d at 512.  Moreover, the jury has broad
discretion to engage in common sense inferences regarding
causation.  Harbin, 921 F.2d at 132.

Here, Plaintiff presented evidence that Defendant's negligence
played a part in bringing about Plaintiff's injury.  Plaintiff
transported ties on a backhoe over a public roadway.  He used the
backhoe because Defendant's tie handler was broken and had not
been repaired or replaced for many years.  One or more of the ties
fell off the backhoe.  Plaintiff was injured lifting a tie to keep it from
obstructing the public roadway.  The jury had a sufficient
evidentiary basis for concluding that Defendant's negligence played
a part in Plaintiff's injury.

Finally, Defendant argues that Plaintiff presented no evidence
that Defendant was negligent with respect to the manual lifting of

the railroad tie on the roadway. However, Plaintiff claimed that Defendant was negligent because, if the tie handler had been available, he would not have had to lift this tie to keep it from obstructing the public roadway because it would not have fallen on the public roadway.

For all of these reasons, Defendant's motion for judgment notwithstanding the verdict is denied.

## III. MOTION FOR A NEW TRIAL

Defendant also argues that the Court should order a new trial because the trial evidence did not support a verdict absent the wrongfully admitted/allowed evidence.

The Court may grant a new trial where the verdict is against the manifest weight of the evidence, the damages are excessive, or the trial was unfair to the moving party. <u>Kapelanski v. Johnson</u>, 390 F.3d 525, 530 (7th Cir. 2004). The Court views the evidence in the light most favorable to the prevailing party. <u>Id.</u> "A new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience."

<u>Davis v. Wis. Dep't of Corr.</u>, 445 F.3d 971, 979 (7th Cir. 2006) (internal quotes and citation omitted).

Defendant first argues that a new trial is warranted because of the admission of the tie handler evidence. Defendant asserts that the tie handler evidence was not legally sufficient to prove that the equipment provided—the backhoe and the pickup truck—was unsafe. Defendant asserts that the admission of the tie handler evidence, including the evidence related to feasibility, confused the jury, was unfairly prejudicial, and resulted in a verdict based on a legally insufficient basis.

Proof of a safer alternative is not necessarily proof of negligence. <u>Taylor v. Ill. Cent. R.R. Co.</u>, 8 F.3d 584, 586 (7th Cir. 1993). A defendant can provide a safe workplace even if safer workplace alternatives exist. <u>Id.</u> However, evidence of safer alternatives can be relevant depending on the circumstances. <u>See</u> <u>Edsall v. CSX Transp. Inc.</u>, No. 1:06-CV-389, 2007 WL 4608788, at *5 (N.D. Ind. Dec. 28, 2007) (finding evidence of an alternative method was relevant to whether the employer provided a reasonably safe workplace under the circumstances). For instance, evidence of an alternative method may be relevant if there is a dispute whether

the employer required the use of a particular method.  In such a
case, evidence of an alternative method is relevant to whether the
method used was reasonable.  See <u>Stone v. New York C., & St. L.R.
Co.</u>, 344 U.S. 407, 409 (1953 ("Whether the straw boss in light of
the risks should have used another or different method to remove
the tie or failing to do so was culpable is the issue."); <u>see</u> <u>also</u>
<u>Williams</u>, 2002 WL 1433724, at *9 (testimony of safer alternatives is
properly excluded only when it is determined that the railroad
exercised reasonable care).  A jury can infer negligence from an
employer's failure to employ a different method or take additional
precautions to ensure its employee's safety.  <u>Harbin</u>, 921 F.2d at
132 (finding that "a jury could reasonably conclude that the
Railroad's failure to employ a different boiler cleaning method or
take additional precautions to ensure the safety of its employees
was negligent" where there was evidence that the plaintiff was told
what process to use, the process caused so much soot that the
mouth guards supplied by the defendant turned black, employees
made repeated complaints of inadequate ventilation, and the
defendant did not rectify the problem),

Here, as noted above, Plaintiff presented evidence from which the jury could find that use of the backhoe or pickup truck to transport ties on the public road was not reasonable. Plaintiff also presented evidence from which the jury could infer that the tie handler was the appropriate equipment for the specific task. Moreover, evidence of the subsequent purchase of the tie handler was relevant on the issue of feasibility and to impeach Defendant for the multiple explanations for why it did not replace the tie handler earlier.

Defendant next argues that Plaintiff improperly engaged in recurrent, argumentative cross-examination/adverse examination of Everett Fletcher and Tim Allen. Defendant asserts that Plaintiff's questioning assumed a duty to supply a tie handler and suggested that any manual lifting was unsafe if automation was available. The Court has reviewed the testimony of Fletcher and Allen and affirms the Court's rulings on objections made during the trial. The Court does not find that Plaintiff engaged in any improper examination of Fletcher and Allen.

Defendant argues that the Court erred by admitting evidence of the parent/subsidiary relationship between Archers Daniel

Midland Company (ADM) and Defendant. Prior to trial, Defendant filed a motion in limine seeking to bar any testimony or reference that Defendant was owned in whole or in part by ADM. In response to the Motion, Plaintiff indicated that he did not anticipate a need to refer to ADM so long as Fletcher could testify that he was in charge of Defendant's operations without referring to ADM. The Court granted the motion in limine.

At trial, Defendant called its expert, Mulvaney to testify that the backhoe constituted proper equipment for the task. After Mulvaney testified on direct, Plaintiff asked the Court, at a sidebar, for permission to ask the expert about ADM being R & R's biggest client. Plaintiff's counsel claimed he did not know that Defendant was going to call Mulvaney and that Mulvaney testified at his deposition that ADM was his biggest client. (Mulvaney was listed on Defendant's witness list). The Court allowed the question. Fletcher subsequently testified that Defendant was a subsidiary of ADM.

Defendant now contends that the Court erred by admitting evidence that Defendant was a subsidiary of ADM because Plaintiff waived or forfeited the issue by not raising it in response to

Defendant's motion in limine. Defendant also objects because Defendant was denied the opportunity to ask the venire about ADM during jury selection and the identification of ADM inferred wealth regarding the feasibility of repairing or replacing the tie handler.

The Court finds that the evidence was admissible on the issue of the bias of Defendant's expert. Moreover, even if admission of the evidence were error, any error was harmless. <u>See</u> <u>E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.</u>, 666 F.3d 422, 440 (7th Cir. 2012); Fed. R. Civ. P. 61 (providing that, unless justice requires, no error in admitting evidence is ground for granting a new trial and that the court must disregard all errors that do not affect a party's substantial rights). The testimony was very short. In addition, Defendant elicited testimony that Defendant operated on its own balance sheet, that its profit and loss was based wholly on its own operations, and that budget considerations influenced all purchase and hiring decisions of the railroad. While Defendant did not get to question the voir dire about ADM during jury selection, neither did Plaintiff. The Court finds a new trial is not warranted on this basis.

Defendant next challenges Plaintiff's examination of Allen regarding an incident when Allen overloaded a Defendant pickup

truck for railroad tie transportation for a personal purpose. Defendant argues that the evidence did not tend to show that the use of the pickup truck to transport ties was unsafe because the circumstances were not similar. Defendant contends that a pickup truck was available to transport the ties and that Plaintiff presented no evidence that a pickup truck was unsafe for the transport of ties.

The evidence was relevant because Defendant presented Allen as a witness who was qualified to testify that a pickup truck was an acceptable and safe method of transporting ties. Evidence that he did not know or disregarded the load capacity of the pickup truck was relevant to the weight of his testimony. Moreover, Defendant elicited testimony before the jury that the ties Plaintiff transported weighed less than the load capacity of the pickup truck. Therefore, the Court finds that a new trial is not warranted on this basis.

Finally, Defendant argues that the verdict was against the manifest weight of the evidence in two respects: (1) the allocation of negligence between Plaintiff and Defendant and (2) the award of $750,000 in gross damages.

The Court finds that evidence supports the jury's verdict on the allocation of negligence between Plaintiff and Defendant. The

jury heard testimony from which the jury could find that neither the backhoe or pickup truck were the appropriate method of transporting the ties in this particular circumstance. The jury also heard testimony that Defendant failed to repair or replace the tie handler despite repeated requests by Plaintiff. In addition, the jury heard testimony that Plaintiff was responsible for loading and driving the backhoe and could have reasonably inferred that Plaintiff bore some responsibility for his injury. Therefore, the allocation of negligence was not against the manifest weight of the evidence.

As for the amount in damages, a court will vacate a jury's award on the basis of excessiveness only where the award is "monstrously excessive" or has "no rational connection to the evidence." DeBiasio v. Ill. Cent. R.R., 52 F.3d 678, 686 (7th Cir. 1995) (citations and internal quotation marks omitted). Here, Plaintiff sought $1.5 million, consisting of past wages of $123,580, future lost wages of at least $792,248, past benefits of $11,492, future lost benefits of at least $75,895, and unspecified damages for physical pain, mental/emotional pain and suffering, and disability/loss of a normal life. The jury heard evidence that

supported these figures and concluded that Plaintiff suffered damages in the total amount of $750,000. The Court finds the award is not monstrously excessive and that there is a rational connection to the evidence. Therefore, a new trial is not warranted on this basis.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. Proc. 50(b) or, Alternatively, Motion for New Trial Pursuant to Fed. R Civ. Proc. 50(b) and 59 (d/e 57) is DENIED.

**ENTERED: April 12, 2018**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**